# THOMAS *v.* WEINTRAUB.

---

PATENTS; INTERFERENCE; AMENDMENTS AND DISCLOSURE; APPEAL AND ERROR.

1. The rule requiring preliminary statements in an interference is a salutary one, its object being to elicit from each of the parties certain vital information before either party is informed as to the statements of the other. Owing to the purpose of the rule, the exercise of the Commissioner's discretion in passing upon motions to amend such statements will not be disturbed, unless it is plain that there has. been an abuse of that discretion.

2. In an interference involving an invention for maintaining electrical excitation for single-phase rectifiers, where the junior party, who had. alleged dates of conception and reduction to practice later than. those alleged by the senior party, claimed the right to amend his preliminary statement so as to substitute an earlier date, which coincided with the date of an earlier application upon which he had received a patent, which application he contended disclosed the invention of the issue, a decision of the Commissioner of Patents awarding priority to the senior party was *affirmed*, it appearing, among other things, that the junior party, who conceded that the drawings. of his earlier application did not of themselves disclose the invention,. amended his second application by inserting therein language intended to bring his invention within the issues of the interference,. at which time the application of the senior party had been on file for nearly a year.

3. Concurrent decisions of the Patent Office will not be disturbed by this. court on appeal, unless obvious error has occurred; especially where complicated electrical devices are involved.   (Following *Lindmark* v.. *Hodgkinson*, 31 App. D. C. 612, and *Weintraub* v. *Hewitt*, ante, 82.)

No. 741.  Patent Appeals.  Submitted January 9, 1912.  Decided February 5, 1912.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference case.          *Affirmed.*

The facts are stated in the opinion.

*Mr. Charles A. Terry* and *Mr. George C. Dean* for the appellant.

*Mr. A. G. Davis, Mr. A. D. Lunt,* and *Mr. Chas. McClair* for the appellee.

Mr. Justice ROBB delivered the opinion of the Court:

This is an appeal from a decision of the Commissioner of Patents in an interference proceeding in which priority of invention was awarded Ezechiel Weintraub, the senior party. The decision was an affirmance of that of the Examiners in Chief, whose decision in turn affirmed that of the Examiner of Interferences.

The issue is expressed in four counts, of which the following are sufficiently representative for the purposes of this opinion:

"1. The combination of a source of single-phase alternating current, an exhausted receptacle, electrodes therefor, one at least of which is of vaporizable material, connections between some of said electrodes and the terminals of said source, a connection between another of said electrodes and a point of intermediate potential on said source, and means independent of said source for generating ionized vapor from the substance of the last-mentioned electrode."

"4. The combination of an exhausted envelop provided with electrodes, a source of single-phase alternating current, means independent of said source for rendering the interior of said envelop conducting for currents of a given direction, and means for causing energy derived from both polarity waves of the alternating current to flow through said envelop."

A preliminary question must first be considered: February 14th and February 26th, 1903, were respectively alleged by Percy H. Thomas [the appellant] in his preliminary statement as his dates of conception and reduction to practice.

These dates were found to be later than those alleged by Weintraub. Thereupon Thomas, before the taking of any testimony by Weintraub, moved for leave to amend his preliminary statement, and substitute January 21st 1903, as his date of conception and reduction to practice. Thomas contended that certain other applications filed by him on the new date given disclosed the invention, and hence that he should be permitted to amend. The Examiner of Interferences denied his motion, but proceeded to examine the prior applications which inspired it, reaching the conclusion that they did not disclose the issue. The Examiners in Chief agreed with the Examiner of Interferences that the earlier applications did not disclose the issue. The Commissioner, after an examination of these earlier applications, ruled that, inasmuch as they did not disclose the invention, it was unnecessary to consider whether the motion to amend should have been granted by the Examiner of Interferences.

The rule requiring preliminary statements is a salutary one, its obvious object being to elicit from each of the parties certain vital information before any party is informed as to the statements of any other. Owing to the purpose of the rule, the exercise of the Commissioner's discretion in passing upon motions to amend such statements will not be disturbed, unless it is plain that there has been an abuse of that discretion. In the present case, had the Commissioner been convinced that the earlier applications of Thomas really disclosed the invention, there was no apparent reason why the motion should not have been allowed. The Commissioner, however, proceeded to examine the earlier applications, and reached the conclusion that they did not disclose the invention. We think, therefore, that this action of the Commissioner must be taken to mean that his reason for not allowing the amendment was because of his conclusion as to the scope of the disclosure in the prior applications.

The Examiner of Interferences thus describes the invention: "In apparatus of this character it is well understood that the initial resistance is high, while the running resistance is low;

but if current, when once started, ceases to flow for any period, however short, the initial high resistance of the apparatus is restored. So long as current flows from any source, there is no high initial resistance, but only the low running resistance, to the passage of current from every other source that makes the cathode of the existing current a cathode for current from such other source. Therefore, continuity of excitation of the cathode is essential. With polyphase currents the several impulses are so disposed relatively to each other, that, when once started, continuity of operation is maintained by the overlapped impulses themselves. But with single-phase currents some supplementary means for maintaining excitation must be provided; for, otherwise, the initial high resistance of the apparatus would be restored with each fall to zero of the current waves.

"Two practical means for maintaining excitation for single-phase rectifiers have been produced; in one, current from an independent source is used; in the other, an inductance is inserted in the circuit of the current which passes through the rectifier, which serves to delay the current impulses, and so cause them to overlap. * * * In the present case both waves are rectified, and the exciting means derives its energy from a source entirely independent of the source of current to be rectified. This source is not the same in both cases. Weintraub uses a direct current supply, while Thomas shows an independent transformer."

Unless the invention is found in the earlier applications relied upon by Thomas in his motion to amend his preliminary statement, he cannot prevail. The application principally relied upon was filed January 21, 1903, and was patented October 13, 1908, patent No. 901,306. Counsel for Thomas in his brief admits that the issue in this interference calls for "means independent of the main source for exciting the cathode." He admits that "this battery is not actually shown in connection with the mercury vapor device 14 (in Fig. 1 of the Patent), but may be relied upon, since the specification says: 'The vapor device 14 may be similarly provided with means for

keeping the device alive, that is to say, maintaining a continuous flow of current in any direction therethrough.'" The specification, however, as originally filed, did not contain this quotation, which was not inserted until February 10, 1904. This we regard as material, in view of the admission that the drawings did not, of themselves, disclose the present invention. The device to which Thomas alluded in his amendment being a three-phase tube was self-sustaining, without the use of any side branch, and it is argued by Weintraub that it was for this reason that no side branch was shown. It must also be remembered that at the time this amendment was inserted Weintraub's application had been on file for nearly a year. The Examiner of Interferences, whose opinion on this point was adopted by the Commissioner, closed his discussion of the question as follows: "As heretofore stated, each and all of the counts specify as an element means independent of the main source for maintaining activity of the rectifier, and each also calls for an envelop or receptacle within which the electrodes are placed. Counts 1 and 3, in addition, specify that one of the electrodes is connected to the source at a point where its potential is intermediate the extremes. While Thomas, in the applications referred to, does disclose current from an independent source for maintaining the rectifiers active, and in Fig. 4 of his application, original No. 139,957, an arrangement which provides the connection to a point of intermediate potential, in none of the figures of either of the two applications does he disclose an arrangement upon which the issue reads. This is admitted by Thomas, but he contends that there would be no invention in bringing the several parts together so that the issue would read thereon. However, it must be held that while he does disclose means for utilizing both waves from a single-phase source, and while certain of the systems which he discloses may be capable of performing the functions of the rectifiers found in the applications involved therein, still, in every instance a plurality of envelops or receptacles are provided for the various electrodes; therefore none of the counts read thereon. While in Fig. 4 of his application, original No.

189,875, he does show a rectifier having a plurality of anodes, this is not shown alone in an operative system, but is combined with other rectifiers which coact therewith to carry out the design of the inventor.

"It is not seen that the disclosures of Thomas in the applications referred to, either separately or together, present the invention here in issue. Not only is the invention itself not disclosed, but it is not believed that the equivalent is found therein, for it is not apparent that Thomas, at the time he executed these applications, appreciated the possibility of constructing therefrom the subject-matter in issue."

This question involves complicated electrical devices, and the expert tribunals of the Patent Office have been unanimous in their rulings. Under the rule uniformly adhered to in this court, their decision will not be disturbed, unless for obvious error. *Lindmark* v. *Hodgkinson,* 31 App. D. C. 612; *Weintraub* v. *Hewitt,* present term, ante, 82. While our minds are not entirely free from doubt, we are not convinced that Thomas, prior to the filing of Weintraub's application, had a conception of this invention.

We therefore affirm the decision of the Commissioner.

*Affirmed.*